# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**CARLENE SULLIVAN,**
        **Plaintiff**

**v.**                **Civil Action Number**
                     **3:06CV-440J**

**MICHAEL J. ASTRUE, Commissioner,**
 **Social Security Administration,**
        **Defendant**

## MEMORANDUM OPINION

This matter is before the Court on plaintiff Carlene Sullivan's request for review of the decision of the defendant Commissioner denying her claim to disability insurance benefits and supplemental security income payments. After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the Commissioner's decision should be vacated and this matter remanded for further proceedings.

Plaintiff filed her applications on November 25, 2003, alleging that she had been unable to engage in substantial gainful activity since October 27, 2003  The Administrative Law Judge ("ALJ") determined that her obesity, degenerative disc disease, congenital cervical spine abnormality and status post lumbar spine surgery were severe impairments, but that they did not prevent her from performing her past relevant work as a receptionist and office worker.

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

4. The claimant must be unable to do her past relevant work.

5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

If the decision is supported by substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," the reviewing Court must affirm. Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991), Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990).

Ms. Sullivan argues that the ALJ's evaluation of the opinion of her treating neurosurgeon was flawed. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that

the courts must hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician.  See also Soc.Sec.Rul. 96-2p.

Dr. Gregory Nazar reported on March 30, 2005 that Ms. Sullivan's back, leg, and neck pain had not responded to conservative treatment, including TENS and physical therapy. Physical exam showed no evidence of direct nerve root compromise, but did show paravertebral muscle spasm, and reduced range of motion.  Straight leg raising was negative for lumbar radiculopathy, but it produced "a significant amount" of low back pain.  Dr. Nazar noted that the MRI results showed "advanced degenerative changes" at L4-5 and L5-S1, and "markedly narrowed disc spaces with central disc bulges being present."  Based on her history, his exam and the radiological studies, Dr. Nazar believed neither surgical intervention nor epidural injections at the levels of previous surgeries would be help her.  He concluded that she could not bend or lift below the waist and could carry a maximum of ten pounds.  He opined that she could not drive or sit "for a long period of time" and needed to change positions regularly. He stated, "I don't feel that she would be able to work an eight hour day."  Tr. 231-233.

The ALJ read Dr. Nazar's report as showing internal inconsistencies.  One such "inconsistency" was the doctor's belief that Ms. Sullivan could not work an eight hour day coupled with his opinion that she might benefit from consultation with a rehabilitation physician. In order to perceive this as an inconsistency, "benefit" from rehabilitative therapies would have to equate with the expectation of return to work.  The Court sees nothing in this record that permits this leap. Occupational and physical therapists may aim in some cases to return patients to gainful employment, but in other cases, their goals must be considerably more modest,

ranging from helping the patient learn to navigate steps or lift groceries with less pain to helping the patient learn how to put on her socks or shoes by herself to showing the patient ways of entering and leaving vehicles.  This is not an inconsistency that justifies disregard of the opinion.

The ALJ also viewed Dr. Nazar's report that his patient's pain radiated into the cervical spine and both legs as "inconsistent" with his findings that the exam was negative for cervical and lumbar radiculopathy.  The Court is puzzled as to why the ALJ perceived any impropriety in Dr. Nazar's diagnosis of "chronic low back pain with nonradicular radiation into her legs and a cephalad radiation into her cervical region." Tr. 231.  Radiating pain is simply pain that extends from a central point, whereas "radiculopathy" refers to a spinal nerve root disfunction.  Dr. Nazar's having ruled out nerve root impingement does not equate with ruling out pain extending from a central point; rather, it simply explains his belief that surgical intervention would not be of assistance in addressing the radiating pain.

Because of these instances of the ALJ's having incorrectly read the record, it is not possible to determine whether he followed applicable rules in assigning weight to the treating physician's opinion, and it necessarily follows that it is impossible to determine whether substantial evidence supports the decision.  Accordingly, this matter must be remanded for further proceedings not inconsistent with this opinion.

An order in conformity has this day entered.